# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.B. and X.S.**

**No. 18-0621** (Raleigh County 2017-JA-045-D and 2017-JA-205-D)

**FILED**

**November 21, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother A.S., by counsel Dennie S. Morgan Jr., appeals the Circuit Court of Raleigh County's June 7, 2018, order terminating her parental rights to M.B. and X.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), P. Michael Magann, filed a response on behalf of the children also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her an improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2017, the DHHR filed a child abuse and neglect petition against petitioner and the father of M.B. According to the DHHR, then fourteen-year-old M.B. reported that his father abused him by attempting to anally penetrate him, showing him explicit sexual content, exposing his genitals, choking and hitting him, and blaming him for things that could not be controlled.[2] Regarding petitioner, the DHHR alleged that she abandoned the child by her failure to provide him any emotional or financial support.

The circuit court held an adjudicatory hearing in May of 2017. Petitioner did not attend, but was represented by counsel who proffered that petitioner was incarcerated in Florida and had not yet been contacted. As such, the circuit court rescheduled the hearing. However, due to difficulties in locating petitioner and acquiring her participation in the proceedings, the matter was continued several times. During the proceedings, it was determined that petitioner remained

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]M.B.'s father voluntarily relinquished his parental rights.

1

incarcerated in Florida and had been transferred to different facilities throughout the case. At one of the facilities, petitioner received correspondence regarding the case and was able to write a letter to the circuit court in response. As such, the circuit court found that petitioner had notice of the proceedings and, in July of 2017, adjudicated petitioner as an abusing parent.

In August of 2017, the circuit court held a dispositional hearing wherein it was discovered that petitioner had another child, X.S. The circuit court ordered that an amended petition be filed to include X.S. and continued the matter. Thereafter, the DHHR filed an amended child abuse and neglect petition against petitioner and the father of X.S. According to the DHHR, X.S. reported that he had been living with his aunt and uncle for a year and did not have contact with petitioner. As such, the DHHR concluded that petitioner abandoned the child by her failure to provide him any emotional or financial support.[3]

In October of 2017, the circuit court held a dispositional hearing. The DHHR and the guardian desired to proceed to disposition on grounds of abandonment and the guardian proffered that petitioner had not contacted either of her children in years. According to the guardian, M.B. had only seen petitioner once since 2013. The guardian related that M.B. specifically requested that petitioner's parental rights to him be terminated. Ultimately, the circuit court decided to appoint a guardian ad litem for petitioner and continued the proceedings to provide the guardian time to contact petitioner. The case was again continued several times due to petitioner's incarceration and her counsel's ongoing difficulty in contacting her.

The circuit court held a final dispositional hearing in May of 2018. During that hearing, a DHHR worker testified that petitioner abandoned the children by failing to provide them any emotional or financial support. The DHHR worker stated that petitioner had not had contact with X.S. for a year and had not had contact with M.B. since 2015, and she further related that both children desired that petitioner's parental rights be terminated.

Petitioner testified that she was incarcerated in Florida on a drug-related charge in 2012 and remained incarcerated until 2014, when she was released on parole. Petitioner testified that she had custody of X.S. until 2016, when she was hospitalized due to a heart infection, and claimed that, during this time, M.B. was first in the custody of his father and then later in the custody of the Department of Juvenile Services. Thereafter, in 2017, petitioner violated the terms of her parole and was incarcerated again. As of the dispositional hearing, she was participating in a work release program and would discharge her sentence in August of 2018. She stated that she was taking parenting and substance abuse classes while incarcerated and desired to be reunified with her children. Specifically, petitioner testified "I'm just asking the [c]ourt to give [me] a chance to do something in August when I get out." Petitioner stated that her plans were to remain in Florida unless the circuit court required her to move back to West Virginia in order to be granted an improvement period.

Following petitioner's testimony, the guardian proffered that M.B. desired that petitioner's parental rights be terminated. The child reported that he witnessed petitioner use drugs repeatedly in his presence while he was in her care and believed that she abandoned him

_____

[3]X.S.'s father's parental rights were terminated during the proceedings below.

by choosing drugs over his wellbeing, which ultimately led to his placement with his father who sexually abused him. Regarding X.S., the guardian proffered that the child was doing well with his current adoptive placement, which provided him stability and permanency.

After hearing evidence, the circuit court found that both children desired termination of petitioner's parental rights and that termination was necessary for their best interests and ability to achieve permanency. It is from the June 7, 2018, dispositional order terminating her parental rights that petitioner appeals.[4]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in denying her an improvement period. Specifically, petitioner argues that she demonstrated she would be likely to participate in an improvement period because she was participating in a work release program wherein she maintained employment, submitted to drug screens, and took parenting and substance abuse classes. We disagree. We have held that the decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements."). We have further held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period. . . .'" *In re Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004). Moreover, pursuant to West Virginia Code § 49-4-604(b)(7)(A), the DHHR is not required to make reasonable efforts to preserve the family if the circuit court determines that "[t]he parent has subjected the child,

---

[4]M.B. is in the custody of the West Virginia Division of Juvenile Services. X.S. was placed with a foster family and the permanency plan is adoption in that home.

another child of the parent or any other child residing in the same household or under the temporary or permanent custody of the parent to aggravated circumstances which include, but are not limited to, abandonment. . . ."

Here, petitioner failed to demonstrate that she was entitled to an improvement period. First, at the time of the dispositional hearing, petitioner was incarcerated and finishing her sentence at a work release program. While it is true that petitioner was to discharge her sentence in August of 2018 and could thereafter participate in services, we note that Rule 5 of the Rules of Procedure for Child Abuse and Neglect Proceedings provides that "[u]nder no circumstances shall a child abuse and neglect [proceeding] be delayed pending the initiation, investigation, prosecution, or resolution of any other proceeding, including, but not limited to, criminal proceedings." As such, the circuit court was not permitted to delay the proceedings due to petitioner's criminal case in order to provide her time to comply with services. Second, the record demonstrates that petitioner's past behavior was indicative of the unlikelihood that she would participate in proceedings. While petitioner claims that she did not abandon her children, M.B. reported to the guardian that petitioner had only contacted him one time since 2013. Although petitioner was incarcerated at times over the years, she was released on parole from 2014 to 2017 and it remains unclear why she made little effort to see or provide for M.B. during that time. Further, X.S. reported that he had not had contact with his mother in the year preceding the filing of the amended petition. Due to the aggravated circumstances of abandonment, the DHHR was absolved of its statutory duty to make reasonable efforts to preserve the family, per West Virginia Code § 49-4-604(b)(7)(A). Accordingly, we find that the circuit court did not err in denying petitioner's request for an improvement period.

Petitioner next argues that the circuit court erred in terminating her parental rights and finding that there was no reasonable likelihood that she could correct the conditions of abuse in the near future when petitioner was taking steps to better herself through her participation in the work release program and parenting and substance abuse classes. We find no merit in petitioner's argument.

Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon findings that there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) and (4) set forth that "no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected" exists when

> (3) The abusing parent or parents have not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child; [or]
>
> (4) The abusing parent or parents have abandoned the child[.]

4

The record demonstrates that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. At the time of the dispositional hearing, petitioner remained incarcerated and was unable to meaningfully participate in services in West Virginia. Petitioner would not discharge her sentence until August of 2018, three months after disposition, and her request to begin participating in services following her release would only serve to delay the children's permanency. Such a delay is prohibited by Rule 5 of the Rules of Procedure for Child Abuse and Neglect Proceedings. While petitioner argues that her participation in the work release program demonstrates that she was reasonably likely to correct the conditions of abuse, we note that the work release program was a term of her incarceration and was not a program specifically designed to correct the conditions of abuse and neglect in which petitioner was a voluntary participant. As such, the record establishes that petitioner was properly adjudicated as having abandoned her children and remained unable to follow through with a reasonable family case plan at the time of the dispositional hearing, which demonstrates that there was no reasonable likelihood that she could substantially correct the conditions of abuse in the near future.

Finally, we note that the record is clear that neither M.B. nor X.S. wish to be returned to petitioner's custody. Indeed, both children, now ages sixteen and fourteen, requested termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6)(C) requires circuit courts to "give consideration to the wishes of a child fourteen years of age or older or otherwise of an age of discretion as determined by the court regarding the permanent termination of parental rights." Here, the circuit court considered the children's wishes in this matter and determined that their best interests necessitated termination of petitioner's parental rights. Because the record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and because the children's welfare necessitated termination, we find no error in the circuit court's decision to terminate petitioner's parental rights. Accordingly, petitioner is entitled to no relief.

For the foregoing reasons, we find no error in the decision of the circuit court, and its June 7, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**: November 21, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment